UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JENNIFER ROSE D.,

       Plaintiff,

  -v-                                    1:19-CV-167

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| DENNIS KENNY LAW<br>Attorneys for Plaintiff<br>288 North Plank Road<br>Newburgh, NY 12550 | JOSEPHINE GOTTESMAN, ESQ. |
| SOCIAL SECURITY ADMINISTRATION<br>  OFFICE OF REGIONAL GENERAL<br>  COUNSEL – REGION II<br>Attorneys for Defendant<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | SERGEI ADEN, ESQ.<br>Special Ass't United States Attorney |

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

    Plaintiff Jennifer D.[1] ("plaintiff" or "claimant") brings this action seeking review of a final

decision by defendant Commissioner of Social Security ("Commissioner" or "defendant")

---

[1] In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's Committee on Court Administration and Case Management and adopted as local practice in this District, only claimant's first name and last initial will be mentioned in this opinion.

denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Defendant has filed a certified copy of the Administrative Record and both parties have briefed the matter.[2] Plaintiff's appeal will be considered on the basis of these submissions without oral argument.

## II. PROCEDURAL HISTORY

In early 2016, plaintiff filed separate applications for SSI and DIB alleging that her recurrent eye problems, skin condition, anxiety, and post-traumatic stress disorder rendered her disabled beginning on September 1, 2015. R. at 66-89.[3]

On May 31, 2016, the Commissioner denied both claims. R. at 92-99. However, at plaintiff's request, defendant ordered an Administrative Law Judge ("ALJ") to conduct a *de novo* review of her consolidated application for benefits. *Id*. at 102-18.

On February 8, 2018, ALJ Katherine Edgell presided over a hearing on plaintiff's claims. R. at 41-65. The ALJ appeared by video from White Plains, New York. *Id*. Plaintiff, represented by attorneys Katherine Usewicz and Dennis Kenny, appeared and testified by video from Poughkeepsie, New York. *Id*. at 19, 41-65. The ALJ also heard testimony from Vocational Expert ("VE") Sugi Y. Komarov. *Id*.

On March 28, 2018, the ALJ issued a written decision denying plaintiff's applications for SSI and DIB. R. at 17-31. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. *Id*. at 1-6.

---

[2] General Order 18 provides, *inter alia*, that a claimant's appeal from the Commissioner's final decision denying benefits will be treated as if the parties have included in their briefing cross-motions for judgment on the pleadings under Fed. R. Civ. P. 12(c).

[3] Citations to "R." refer to the Administrative Record. Dkt. No. 8.

### III. LEGAL STANDARDS

#### A. Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied. *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

"First, the Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). "Failure to apply the correct legal standards is grounds for reversal." *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984).

"Next, the Court examines the record to determine if the Commissioner's conclusions are supported by substantial evidence." *Tejada*, 167 F.3d at 773. "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Poupore*, 556 F.3d at 305 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. *See Williams*, 859 F.2d at 258. Indeed, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may lead it to a

different conclusion than the one reached by the Commissioner. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## B. The Commissioner's Disability Determination

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Section 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity. A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits. §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If the claimant is found to suffer from a severe impairment or combination of

- 4 -

impairments, then step three requires the ALJ to determine whether, based solely on medical evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings"). 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant whose impairment or combination of impairments meets or equals one of the Listings is "presumptively disabled." *Martone*, 70 F. Supp. 2d at 149.

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether—despite the claimant's severe impairment—the claimant still has the residual functional capacity ("RFC") to perform any past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

The burden of proof with regard to these first four steps is on the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). However, if it is determined that the claimant cannot perform any past relevant work, the burden shifts to the Commissioner for step five. *Id*.

This fifth step requires the ALJ to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant retains the RFC to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. *Perez*, 77 F.3d at 46.

The Commissioner typically meets the burden at step five in one of two ways. If a claimant's impairments are primarily or exclusively exertional in nature, defendant may appropriately rely on the Medical–Vocational Guidelines contained in 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Roma v. Astrue*, 468 F. App'x 16, 20 (2d Cir. 2012) (summary order).

Commonly known as "the Grid" or "the Grids," the Medical–Vocational Guidelines are a collection of tables that "simplify and expedite the determination of disability" by offering

"predeterminations of disability or non-disability for individual cases based on various combinations of residual functional capacity, age, education and work skill." *Davis v. Shalala*, 883 F. Supp. 828, 832 (E.D.N.Y. 1995) (citation omitted)

Notably, the Commissioner may rely on the Guidelines even if a claimant suffers from one or more non-exertional impairments. *See, e.g., Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986) (Cardamone, J.) ("[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines.").

However, if a claimant's non-exertional limitations "significantly diminish" the residual capacity to work, the Commissioner "must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." *Chaparro v. Colvin*, 156 F. Supp. 3d 517, 537 (S.D.N.Y. 2016) (citation and internal quotation marks omitted).

## IV. **DISCUSSION**

### A. **The ALJ's Decision**

Applying the five-step disability determination, the ALJ found that: (1) plaintiff had not engaged in substantial gainful activity since September 1, 2015, the alleged onset date; (2) plaintiff's bipolar disorder, depressive disorder, post-traumatic stress disorder, anxiety disorder, monocular vision, hypertension, and obesity were severe impairments within the meaning of the Regulations; and that (3) these impairments, whether considered individually or in combination, did not meet or equal any of the Listings. R. at 20-22.

At step four, the ALJ determined that plaintiff's impairments caused exertional and non-exertional limitations. R. at 22-29. However, the ALJ found that plaintiff still retained the

RFC to

> perform medium work, . . . except that she can lift or carry up to 25 pounds frequently and 50 pounds occasionally; sit, stand, or walk up to 6 hours in an 8 hour day; and can performs simple, repetitive tasks with no significant decision making or multi-tasking[.] [The claimant can tolerate] no more than occasional interaction with supervisors and rare interaction with the public and co-workers. The claimant is also limited to work that does not require good depth perception or exposure to hazardous machinery.

*Id.* at 2.

According to the ALJ, this RFC precluded plaintiff from performing her past relevant work as a "child monitor," a "fast food worker," or as a "sales attendant." R. at 29. Even so, the ALJ found that this RFC, considered together with plaintiff's age and education, still allowed her to perform the job duties of a "photo copy machine operator," a "mail clerk," and an "office helper." R. at 30.

Because these representative jobs fit in with plaintiff's assessed limitations and were present in sufficient numbers in the national economy, the ALJ concluded plaintiff was not disabled within the meaning of the Regulations. R. at 30. Accordingly, the ALJ denied plaintiff's application for benefits from September 1, 2015, the alleged onset date, through March 28, 2018, the date of her written decision. *Id*.

### B. Plaintiff's Appeal

On appeal, plaintiff contends the ALJ failed to appropriately develop the record and, as a result, formulated an RFC based on partial information that failed to account for the full range of her exertional and non-exertional limitations. Pl.'s Mem., Dkt. No. 9 at 21-28.[4]

---

[4] Pagination corresponds to CM/ECF.

### 1. **The ALJ's Duty to Develop the Record**

Plaintiff contends the ALJ should have sought clarification from her medical sources about the limiting effects caused by several impairments before rendering her decision. Pl.'s Mem. at 21-26.

For instance, plaintiff argues that the ALJ had insufficient information about the nature and extent of her dyshidrotic eczema to correctly conclude that it did not significantly impact her ability to do work-related activities. Pl.'s Mem. at 21 ("The question as to whether Plaintiff would be seriously limited in frequent use of her hands with this condition involves a medical determination, and the ALJ should have inquired of [her medical sources] as to such limitations."). Plaintiff also argues that the ALJ should have sought clarification from the consultative ophthalmologist about the precise nature and extent of her vision problems. *Id*. at 21-23. Finally, plaintiff argues the ALJ should have sought the medical opinion of one or more of plaintiff's treating sources before deciding her RFC. *Id*. at 25.

"Social Security proceedings are inquisitorial rather than adversarial." *Shultz v. Berryhill*, 2018 WL 3520424, at *3 (N.D.N.Y. July 20, 2018) (quoting *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 261 (S.D.N.Y. 2016)). "Consequently, the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Id*. (citation and internal quotation marks omitted). This duty "remains the same regardless of whether the claimant is represented by counsel." *Puente v. Comm'r of Soc. Sec.*, 130 F. Supp. 3d 881, 893 (S.D.N.Y. 2015).

This duty generally requires the ALJ to "develop the claimant's medical history for at least the 12 months preceding the determination." *Trancynger v. Comm'r of Soc. Sec.*, 269

- 8 -

F. Supp. 3d 106, 117 (S.D.N.Y. 2017). Indeed, "[t]he governing statute provides that the ALJ shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make the disability determination." *Id*. (citation and internal quotation marks omitted).

But the scope of this duty is not without limit. As the Commissioner has recently clarified, the applicable statutory provision "places primary responsibility for the development of evidence on the claimant." *Titles II and XVI: Responsibility for Developing Written Evidence*, Social Security Ruling 17-4p, 2017 WL 4736894 (Oct. 4. 2017) ("SSR 17-4p); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a). Thus, as courts have long recognized, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Evans v. Comm'r of Soc. Sec.*, 110 F. Supp. 3d 518, 538-39 (S.D.N.Y. 2015) (quoting *Rosa v. Callahan*, 168, F.3d 75, 79 n.5 (2d Cir. 1999)).

Stated differently, there is a tension between, on the one hand, a statutory and regulatory command that obligates the claimant to promptly disclose to the Commissioner any evidence that tends to support a finding of disability and, on the other, a fairness principle that obligates the ALJ, as a subject matter specialist presiding over an essentially non-adversarial proceeding, to develop a full and fair record—not just aspects of the record that might militate in favor of denying benefits. *Cf. Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) ("Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record . . . and then later fault the ALJ for

not performing a more exhaustive investigation.")

Upon review, the ALJ struck the appropriate balance and fully discharged her duty in this case. The administrative record includes medical data from before and after the onset date alleged by plaintiff. It includes treatment notes from the office of Paul Bushkuhl, M.D., plaintiff's primary care provider. R. at 211-17, 237-48. It includes treatment notes from Mohsin Cheema, M.D. and Howard L. Tanenbaum, M.D., retina specialists who treated plaintiff for the eye condition(s) the ALJ found to be severe. *Id.* at 203-10, 218-22-36. And it contains treatment and progress notes from Spectrum Behavioral Health, where plaintiff treated with psychiatrist Julia Speicher, M.D. for her mental impairments. *Id.* at 272-307, 333-388.

But the ALJ did not just rely on these records to render her decision. Instead, prior to the hearing the Commissioner referred plaintiff for a total of <u>five</u> consultative examinations in an effort to assess the effects of plaintiff's physical *and* mental impairments. R. at 254-59, 261-65, 268-71, 308-22, 323-32.

For her physical impairments, the Commissioner referred plaintiff to Mohammed Zaman, M.D. and John Caruso, M.D., two different physicians who conducted two different internal medicine examinations on two different occasions. R. at 254-59, R. at 308-22. Notably, Dr. Zaman and Dr. Caruso were both aware of plaintiff's complaints about the limiting effects of her dyshidrotic eczema and her vision problems. *See id.* at 254, 308.

The ALJ also referred plaintiff to Chad Lewick, O.D., an ophthalmologist, who conducted a more specialized examination of her vision problems. R. at 266-71. Finally, for her mental impairments, the Commissioner referred plaintiff to psychologist Alison Murphy, Ph.D., who conducted two consultative psychiatric examinations on two different

occasions. *Id*. at 261-65, 323-32.

Viewed against this background and the other evidence on file, it becomes clear that plaintiff cannot point to any genuine gaps in the administrative record. Instead, as the Commissioner points out, plaintiff seems to be suggesting "it is possible that, were the ALJ to seek input from yet more doctors, that might have yielded evidence favoring Plaintiff's disability claim." Def.'s Mem., Dkt. No. 10 at 19.

Indeed, a review of plaintiff's brief reveals that her record-development argument tries to confuse process with outcome. Plaintiff's complaints about the adequacy of the record seem tied to instances where the ALJ, in formulating her RFC determination, made statements explaining her rationale for partially discounting one or more of a medical source's conclusions. *See, e.g.*, Pl.'s Mem. at 22 ("The ALJ *predictably* found minimal or no support for [Dr. Caruso's findings.]"); *id*. at 24 (noting that "*predictably* less weight" was given to Dr. Murphy's findings of more restrictive impairments"); *id*. at 25 (faulting the ALJ for "thoroughly enumerating the considerations . . . that she was *legally* required to make").

This is not a basis for remand. The ALJ is obligated to develop a reasonably thorough record, which includes filling in any obvious gaps, and to then render a decision by weighing the conflicting evidence using the appropriate legal standards. Plaintiff has a contrary vision of how the first part of this review process should operate—she advocates that the ALJ should have re-contacted every medical source who offered a less-than-perfect opinion or an opinion that the ALJ chose not to fully adopt for one reason or another.

But doing things that way would seem to deprive the ALJ of her ability to complete the second part of this review process—to actually weigh the conflicting evidence and make a final decision on a claim. In other words, plaintiff's argument fails to acknowledge that "the

ALJ has both the ability and the responsibility to resolve conflicts in the evidence." *Doty v. Comm'r of Soc. Sec.*, 2017 WL 4621630, at *6 (N.D.N.Y. Oct. 13, 2017) (Suddaby, J.). Accordingly, this argument will be rejected.

## 2. The RFC Determination

Plaintiff also argues the ALJ failed to formulate an RFC that reflected the true extent of her physical and mental limitations. Pl.'s Mem. at 26-28. According to plaintiff, the ALJ failed to account for various limitations demonstrated in the record. *Id*. at 27 (listing series of alleged limitations).

"Where, as here, the ALJ finds at step two that a claimant has one or more 'severe' impairments but determines at step three that the claimant is not presumptively disabled, the ALJ must go on to make an RFC finding, which is an assessment of 'what an individual can still do despite his or her limitations.'" *Tammy Lynn B. v. Comm'r of Soc. Sec.*, 382 F. Supp. 3d 184, 192 (N.D.N.Y. 2019) (quoting *Cox v. Astrue*, 993 F. Supp. 2d 169, 183 (N.D.N.Y. 2012) (McAvoy, J.)).

"In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, [and symptomatology], including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Samantha S. v. Comm'r of Soc. Sec.*, 385 F. Supp. 3d 174, 183 (N.D.N.Y. 2019) (citation omitted).

"The claimant's RFC is determined based on all of the relevant medical and other evidence in the record, including the claimant's credible testimony, objective medical evidence, and medical opinions from treating and consulting sources." *Rivera v. Comm'r of Soc. Sec.*, 368 F. Supp. 3d 626 (S.D.N.Y. 2019) (citations omitted). "In practice,

administrative law judges rely principally on medical source opinion and subjective testimony when assessing impaired individuals' ability to engage in work-related activities." *Tammy Lynn B.*, 382 F. Supp. 3d at 192-93 (citation omitted).

Broadly speaking, the Regulations divide evidence from a claimant's medical sources into three categories: (1) treating; (2) acceptable; and (3) other.[5] The most important of these is the treating source category, which includes a claimant's "own physician, psychologist, or other acceptable medical source" who has provided "medical treatment or evaluation and who has, or has had an ongoing treatment relationship" with the claimant. *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

The opinion of a treating source regarding the nature and severity of a claimant's impairments is entitled to *controlling* weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted).

However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Tammy Lynn B.*, 382 F. Supp. 3d at 193 (citation omitted). And when a treating source's opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts, an ALJ may afford it less than controlling weight. *Id*. In fact, a treating physician's opinion may also be properly discounted, or even entirely rejected,

---

[5] On January 18, 2017, the Social Security Administration made revisions to the rules regarding the evaluation of medical evidence. Because plaintiff's claim was filed before March 27, 2017, the prior policies govern here. *See, e.g.*, *Daniels ex. rel. D.M.G. v. Comm'r of Soc. Sec.*, 2018 WL 5019746, at *6 n.13 (S.D.N.Y. Sept. 30, 2018) (explaining the elimination of the treating physician rule and related changes); *Perez v. Comm'r of Soc. Sec.*, 2019 WL 359980, at *6-*7 nn. 6-8 (E.D.N.Y. Jan. 29, 2019) (explaining various changes effective to claims filed after March 27, 2017).

when: (1) it is internally inconsistent; (2) the source lacks underlying expertise; (3) the opinion is brief, conclusory, or unsupported by clinical findings; or even where (4) it "appears overly sympathetic such that objective impartiality is doubtful and goal-oriented advocacy reasonably is suspected." *Id*. (citation omitted).

Where an ALJ decides to afford a treating source's opinion less than controlling weight, he must still consider various factors in determining how much weight, if any, to give the opinion, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) what evidence supports the treating physician's report; (4) how consistent the treating physician's opinion is with the record as a whole; (5) the area of specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant in claimant's particular case. *Tammy Lynn B.*, 382 F. Supp. 3d at 193-94 (citation omitted).

Beyond this so-called "treating physician rule," the same six factors set forth above apply with equal force to the evaluation of the remaining categories of medical evidence recognized by the Regulations: the "acceptable" and "other" sources mentioned earlier. *Tammy Lynn* B., 382 F. Supp. 3d at 194 (citation omitted). The former, those deemed "acceptable" sources, include "licensed physicians (medical or osteopathic doctors, psychologists, optometrists, podiatrists, and speech-language pathologists." *Id*. The latter category, deemed "other" in Administration parlance, are "ancillary providers such as nurse practitioners, physician assistants, licensed clinical social workers, and therapists." *Id*.

Importantly, only evidence from a "treating" or "acceptable" source can be relied upon to establish the *existence* of a medically determinable impairment. *Tammy Lynn B.*, 382 F. Supp. 3d at 194 (citation omitted). However, evidence from all three sources "can be

considered when determining severity of impairments and how they affect individuals' ability to function." *Id*.

Finally, while the six-factor analysis set forth above applies in all cases except where "controlling" weight is given to a treating physician's opinion, an ALJ need not mechanically recite these factors as long as the record reflects a proper application of the substance of the rule. *See, e.g.*, *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (summary order) (noting that an ALJ need not expressly recite each factor so long as it is "clear from the record as a whole that the ALJ properly considered" them).

This argument is also rejected. An independent review of the ALJ's thorough written decision confirms that she applied the correct legal standards when assigning weight to the various medical opinions in the record. R. at 22-29. Plaintiff has marshaled evidence from the record tending to support her position that her impairments caused her to suffer additional limiting effects not incorporated in the ALJ's RFC determination. *See* Pl.'s Mem. at 26-27.

But that is not enough to warrant remand. "The substantial evidence standard means that once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original) (citation and internal quotation marks omitted). In other words, a claimant must "show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record." *Z.J.F. ex rel. Conkling v. Comm'r of Soc. Sec.*, 2018 WL 1115516, at *6 (N.D.N.Y. Feb. 27, 2018) (Carter, M.J.).

Plaintiff has not carried this burden. *Cf. Greene v. Astrue*, 2012 WL 1248977, at *3 (D. Mass. Apr. 12, 2012) ("[I]n what has become a too common practice, Plaintiff's counsel

merely summarizes evidence in the record that she believes supports her client's argument that she is disabled."). Accordingly, this argument will also be rejected. *See, e.g.*, *Tammy Lynn B.*, 382 F. Supp. 3d at 195 ("Plaintiff's disagreement with the ultimate factual determinations that the ALJ drew from this record evidence is not a basis for remand.").

## V. **CONCLUSION**

The ALJ applied the appropriate legal standards and supported her written decision with substantial evidence in the record.

Therefore, it is

ORDERED that

1. Plaintiff's motion for judgment on the pleadings is DENIED;

2. The Commissioner's motion for judgment on the pleadings is GRANTED;

3. The Commissioner's decision is AFFIRMED; and

4. Plaintiff's complaint is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

Dated: January 7, 2020
Utica, New York.

United States District Judge